UNITED STATES DISTRICT COURT
FOR THE
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE EXTRADITION    )
OF SENAD CEJVAN                       )    Misc. No. 4:16 MJ 3158 NCC
                                       )

## MEMORANDUM OF LAW IN SUPPORT OF EXTRADITION

COMES NOW the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District, and submits this memorandum of law regarding the request to extradite Senad Cejvan to Saba.

On August 12, 2016, the United States filed an initial complaint for the provisional arrest of Senad Cejvan, at the request of the Government of Netherlands (Saba) pursuant to the Extradition Treaty between the United States of America and the Kingdom of Netherlands signed on June 24, 1980 ("the Treaty") as amended by the Agreement as to the application of the Treaty signed on June 25, 2003 ("the Annex"), and pursuant to 18 U.S.C. 3184 et seq. In this matter, the United States acts on behalf of the Dutch government in accordance with United States' treaty obligations.

The Netherlands has now submitted a formal request for Cejvan's arrest, extradition and surrender, supported by appropriate documents, to the United States Department of State. These documents were certified by the Department of State on October 18, 2016, and received in this district on October 19, 2016. By statute, this Court must hold a hearing to consider the evidence of criminality presented by the Netherlands and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184. The extradition packet will be submitted as an exhibit at the hearing, a courtesy copy will be delivered to the Court with this filing. If the Court finds the evidence sufficient, it must "certify

the same" to the Secretary of State, who decides whether to surrender the fugitive "according to the treaty." *Id. United States v. Wiebe*, 733 F.2d 549, 553 (8th Cir. 1984)[1]

    Because an extradition hearing is *sui generis* and not a criminal or civil proceeding, the government offers this memorandum setting out the legal principles that govern the hearing to be held pursuant to 18 U.S.C. § 3184.

## I.   THE ROLE OF THE EXTRADITION JUDGE IS LIMITED

    Extradition is primarily an executive responsibility with a specially defined role for a judicial officer, who is authorized by statute to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. § 3184. The Secretary of State, and not the court, makes the decision regarding whether the fugitive should be surrendered to the requesting country. 18 U.S.C. §§ 3184, 3186; *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 828 (11th Cir. 1993); *Lo Duca v. United States,* 93 F.3d 1100, 1110 n.10 (2d Cir. 1996). The Executive Branch remains primarily responsible for extradition, while the extradition judge is assigned the limited duty of determining the sufficiency of the request under the applicable treaty provisions. *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 821, 828-829 (11th Cir. 1993). That judicial function is carried out by conducting the hearing pursuant to 18 U.S.C. § 3184.

    At the hearing, the court should consider the evidence presented on behalf of the requesting country and determine whether the legal requirements for certification, as defined in the treaty, statutes and case law, have been established. If any explanatory evidence is offered by the fugitive, the court rules on its admissibility. Once the evidentiary record is complete, the court should make written findings of fact and conclusions of law as to each of the elements for certification, including separate findings for each offense as to which extradition is sought.

---

[1] After the Court has completed its "limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender." *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993). "The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations, which the extradition magistrate may not." *Id.*

*Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973).  If the court certifies the evidence to the Secretary of State, the court must commit the fugitive to the custody of the United States Marshal to await the further determination by the Secretary regarding surrender to the representatives of the requesting state.  The court provides its certification to the Secretary of State together with a copy of the evidence and a transcript of any testimony presented at the hearing.  18 U.S.C. § 3184; *see Ordinola v. Hackman*, 478 F.3d 588, 597 (4th Cir. 2007).

The applicable extradition treaty should be liberally construed in order to effect its purpose, namely, the surrender of fugitives to the requesting country.  *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 14 (1936); *Factor v. Laubenheimer*, 290 U.S. 276, 301 (1933); *United States v. Wiebe*, 533 F.2d at 554.

> [A] narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern the diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed so as to effect the apparent intentions of the parties to secure equality and reciprocity between them. [citations omitted].

*McElvy v. Civiletti*, 523 F. Supp. 42, 47 (S.D. Fla. 1981)

In order to carry out a treaty obligation, the treaty "should be construed more liberally than a criminal statute or the technical requirements of criminal procedure," *Factor v. Laubenheimer,* 290 U.S. 276, 298 (1933).  This country does not expect foreign governments to be versed in our criminal laws and procedures.  *Grin v. Shine*, 187 U.S. 181, 184 (1902).  Thus, "[f]orm is not to be insisted upon beyond the requirements of safety and justice."  *Fernandez v. Phillips,* 268 U.S. 311, 312 (1925), *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994)**.**

Statements by the United States Department of State as to interpretation of treaties should be given great weight by the court.  *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 168 (1999);  *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 184-185 (1982) ("Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight.").

## II.    THE REQUIREMENTS FOR CERTIFICATION ARE WELL-SETTLED

An extradition certification is in order where:  (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) the crimes for which surrender is requested are covered by the applicable treaty; and (5) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.  *Fernandez v. Phillips,* 268 U.S. 311, 312 (1925),  *cited in Yapp v. Reno*, 26 F.3d 1562, 1565 (11th Cir. 1994); *Hill v. United States*, 737 F.2d 950, 951 n.1 (11th Cir. 1984); *In re Assarson* , 687 F.2d 1157, 1159 (8th Cir. 1982).

### A.  Authority of the Court Over the Proceedings

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  *See Austin v. Healey,* 5 F.3d 598, 601-602 (2d Cir. 1993) (magistrate had authorization to conduct the extradition hearing without specific delegation of authority); *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); *Jimenez v. Aristeguieta*, 311 F.2d 547, 553-555 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing).

### B.  Jurisdiction Over the Fugitive

It is also well settled that the court has jurisdiction over a fugitive found within its jurisdictional boundaries.  18 U.S.C. § 3184 (court "may, upon complaint made under oath, charging any person found within his jurisdiction,  . . .  issue [its] warrant for the apprehension of the person so charged").  *Pettit v. Walshe* , 194 U.S. 205, 219 (1904); *Grin v. Shine*, 187 U.S. 181 (1902); *In re Pazienza*, 619 F. Supp. 611 (S.D.N.Y. 1985); *In re Assarson*, 687 F.2d at 1160.

### C.  Treaty in Full Force and Effect

18 U.S.C. § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  *See, e.g., In re Chan Kam-Shu*, 477 F.2d 333 (5th Cir. 1973).  The declaration of Katherine Fennell, an attorney in the Office of the Legal Adviser for the Department of State, attests that there is a treaty in full force and effect between the United States and the Netherlands.  Again, the Department of State's determination is entitled to deference from the court.  *Terlinden v. Ames*, 184 U.S. 270, 288 (1902); *Kastnerova v. United States,* 365 F.3d 980, 985-987 (11th Cir. 2004), *cert. denied,* 541 U.S. 1090 (2004)*; United States ex rel. Saroop v. Garcia*, 109 F.3d 165, 171 (3d Cir. 1997); *Then v. Melendez*, 92 F.3d 851, 854 (9th Cir. 1996).

### D.  Crimes Covered by the Treaty

Extradition treaties create an obligation for the United States to surrender fugitives under the circumstances defined in the treaty.  Article 1 of the Annex provides for the return of fugitives charged with or convicted of an "extraditable offense" as that term is defined in Article 2 of the Annex.

Offenses are extraditable if the criminal conduct is punished under the laws of both the United States and the Netherlands by a deprivation of liberty for a period exceeding more than one year or by a more severe penalty.  Consequently, the court should examine the description of criminal conduct provided by the Netherlands in support of its charge and decide whether that conduct would have been criminal under U.S. law, if committed in this country.  A requesting country is not obliged to produce evidence on all elements of a criminal offense nor to establish that its crimes are identical to ours.  *Kelly v. Griffin*, 241 U.S. 6, 15 (1916).  The Supreme Court noted in *Collins v. Loisel,* 259 U.S. 309 (1922), that dual criminality is not a technical concept involving a comparison of elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries.  It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. at 312 (emphasis added); *accord Gallo-Chamorro v. United States,* 233 F.3d 1298, 1307 (11th Cir. 2000); *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995).

Dual criminality is established if the conduct involved in the foreign offense would be criminal under either U.S. federal law, the law of the state in which the hearing is held, or the law of a preponderance of the states. *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107-108 (9th Cir. 1981). The court should "approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981), "because extradition treaties should be interpreted with a view to fulfil our just obligations to other powers." *Grin v. Shine*, 187 U.S. 181, 184 (1902). Foreign governments should not be expected to be versed in our criminal laws and procedures. *Id. a* t 184-185.

There are corresponding charges under United States law to each of the crimes with which Cejvan is charged in Saba. The Criminal Code of Bonaire, Saint Eustatius and Saba (CCBES) with regard to the offenses for which extradition is sought and approved, mirrors applicable Federal and State law in this jurisdiction. Murder, CCBES, Title XIX, Article 302, which requires taking another's life with deliberation is the equivalent of First Degree Murder, V.A.M.S., 565.020. Manslaughter (listed as Homicide in the charging document) under CCBES, Title XIX, Article 300, is the taking of another life without premeditation, which is equivalent to Second Degree Murder, V.A.M.S., 565.021, knowingly causing the death of another. Aggravated Assault (premeditated), defined in CCBES, Title XX, Article 313-315 as the intentional infliction of grievous bodily harm with premeditation, corresponds to Assault, First Degree, V.A.M.S., 565.050 which punishes knowingly causing serious physical injury to another person. Rape, CCBES, Title XIV, Article 248, and Rape, V.A.M.S., 566.030 both prohibit nonconsensual sexual intercourse. Finally, Child Pornography, CCBES, Title XIV, Article 246 bis makes the possession of child pornography on a computerized device unlawful. Title 18, United States Code, Section 2252A makes possession of child pornography illegal in any medium, "including by computer." In short, defendant's activity, had it occurred in the United States, would have been subject to prosecution and thus duality is established.

### E.  Probable Cause that the Fugitive has Committed the Offenses

The standard of proof to find the evidence "sufficient to sustain the charge . . . " pursuant to Section 3184 is the familiar domestic requirement of probable cause.  The court must conclude there is probable cause to believe that the crime charged by the Netherlands was committed and the person before the court committed it.  *Hoxha v. Levi*, 465 F.3d 554, 561 (3d Cir. 2006); *Sindona v. Grant,* 619 F.2d 167 (2d Cir. 1980).  The evidence is sufficient and probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused.  *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).  The Supreme Court stated in *Benson v. McMahon*, 127 U.S. 457, 463 (1888), that:

> the proceeding before the commissioner is not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him.

*See also Collins v. Loisel*, 259 U.S. 309, 316 (1922) ("The function of the committing magistrate is to determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."); *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) ("Competent evidence to establish reasonable grounds is not necessarily competent evidence to convict.").  *Accord, Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005); *Barapind v. Enomoto*, 400 F.3d 744, 752 (9th Cir. 2005); *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997).

## III.    EXTRADITION IS SUI GENERIS AND FOLLOWS UNIQUE PROCEDURES

### A.    An Extradition Hearing Is Not a Criminal Proceeding

The extradition hearing prescribed by 18 U.S.C. § 3184 is unique in nature.  *See, e.g., Martin v. Warden, Atlanta Penitentiary,* 993 F.2d 824, 828 (11th Cir. 1993); *Jhirad v. Ferrandina*, 536 F.2d 478, 482 (2d Cir. 1976) (extradition is *sui generis*), *cert. denied,* 429 U.S.

7

833 (1976).  As described in *Jhirad*, an extradition hearing is *sui generis*, meaning its own type of case, with its structure and process defined by statute and treaty.  *Id.*  An extradition hearing is not a criminal proceeding; its purpose is to decide the sufficiency of the charge under the treaty, not guilt or innocence.  *Neely v. Henkel*, 180 U.S. 109, 123 (1901); *Benson v. McMahon*, 127 U.S. 457, 463 (1888); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005).  The limited nature of the hearing has resulted in special procedural and evidentiary rules that apply. For example, the person whose extradition is sought is not entitled to the rights available in a criminal trial.  *Neely v. Henkel,*180 U.S. 109, 122 (1902) (rights available to one charged with criminal offense in this country not applicable to offenses committed outside the United States against the laws of another country); *Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993).  The purpose of an extradition hearing under § 3184 is not to try the underlying charge.  That is for the foreign court.  *Neely v. Henkel*, 180 U.S. 109, 123 (1901).      The Federal Rules of Criminal Procedure do not apply to extradition proceedings.  Rule 54(b)(5) states:  "These rules are not applicable to extradition and rendition of fugitives."  The Federal Rules of Evidence are also inapplicable.  Rule 1101(d)(3) provides:  "The rules (other than with respect to privileges) do not apply  .  .  .  [to p]roceedings for extradition or rendition."  *See Afanasjev v. Hurlburt*, 418 F.3d 1159, 1164-1165 (11th Cir. 2005) ; *Melia v. United States*, 667 F.2d 300 (2d Cir. 1981); *Greci v. Birknes*, 527 F.2d 956 (1st Cir. 1976).  Moreover, the fugitive has no right to discovery, *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005); *Koskotas v. Roche,* 931 F.2d 169, 175 (1st Cir.1991); *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); he has no right to cross examine witnesses who might testify at the hearing, *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1407 (9th Cir. 1988); *Messina v. United States,* 728 F.2d 77, 80 (2d Cir. 1984); his right to present evidence is severely limited, *Messina v. United States,* 728 F.2d 77, 80 (2d Cir. 1984); there is no Sixth Amendment right to a speedy trial, *Yapp v. Reno,* 26 F.3d 1562, 1565 (11th Cir. 1994); *Martin v. Warden, Atlanta Penitentiary*, 993 F.2d 824, 829 (11th Cir. 1993); *Sabatier v. Dabrowski*, 586 F.2d 866, 869 (1st Cir. 1978), the Fifth Amendment guarantee against double jeopardy does not apply to successive

8

extradition proceedings, *Collins v. Loisel,* 262 U.S. 426, 429 (1923); *Matter of Extradition of McMullen*, 989 F.2d 603, 612-613 (2d Cir. 1993), the exclusionary rule is not applicable, *Romeo v. Roache,* 820 F.2d 540, 545 (1st Cir. 1987); *Simmons v. Braun*, 627 F.2d 635, 636-637 (2d Cir. 1980); and the defendant does not have the right to confront his accusers, *Bingham v. Bradley,* 241 U.S. 511, 517 (1916).

## B.   Extradition Hearings Rely on Written Submissions and Do Not Require Live Witnesses

A certification of extradition typically is based entirely on the authenticated documentary evidence and information provided by the requesting government.  *See, e.g., Bovio v. United States*, 989 F.2d 255, 259-261 (7th Cir. 1993) (Swedish investigator's statement sufficient to establish probable cause); *Eain v. Wilkes*, 641 F.2d 504, 509-511 (7th Cir. 1981) (sworn statement of cooperator, corroborated by police officer affidavit and affidavit of second civilian witness sufficient); *O'Brien v. Rozman,* 554 F.2d 780, 783 (6th Cir. 1977); *Shapiro v. Ferrandina,* 478 F.2d 894, 902-903 (2d Cir. 1973); *Matter of Extradition of Mainero*, 990 F. Supp. 1208, 1212-1213 (S.D. Cal. 1997) (statements of co-conspirators and other witnesses sufficient in extradition to Mexico for murder); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433-1434 (S.D. Fla. 1993) (documents and statements sufficient for extradition to Honduras), *aff'd.* 28 F.3d 116 (11th Cir. 1994); *In re Edmonson*, 352 F. Supp. 22, 24 (D. Minn. 1972).  The finding may also be based upon written statements by the foreign prosecutor or judge summarizing the evidence.  *Rice v. Ames,* 180 U.S. 371, 375-376 (1901).

The federal statute and the applicable treaty govern both the nature of and the admissibility of the evidence at an extradition hearing.  Article 9 of the Annex lists the required submissions by the Netherlands.  Section 3190 provides that "properly and legally authenticated" documentary evidence including "depositions, warrants, or other papers or copies thereof *shall be admitted.*" *See* 18 U.S.C. § 3190 (*emphasis added*).[2]  *See Afanasjev v. Hurlburt*, 418 F.3d

---

[2]  "Depositions, warrants or other papers or copies thereof offered in evidence upon a hearing of any extradition case shall be received and admitted as evidence on such hearing for all

1159, 1164 (11th Cir. 2005); *see also Collins v. Loisel*, 259 U.S. 309, 313 (1922).  Proof that the authentication is proper and legal exists if the documents are accompanied by the certificate of an appropriate U.S. diplomatic or consular officer in the requesting country attesting that the documents would be admissible for similar purposes in that country.  18 U.S.C. § 3190.  The certification of Katherine Fennell attests to the authenticity of the foreign official's signature.  Extradition treaties do not require or even anticipate the testimony of live witnesses at the hearing because to do so "would defeat the whole object of the treaty." *Yordi v. Nolte*, 215 U.S. 227, 231 (1909); *see also Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *Afanasjev  v. Hurlburt*, 418 F.3d 1159, 1163-1165 (11th Cir. 2005), *cert. denied,* 546 U.S. 993 (2005); *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986);  *Shapiro v. Ferrandina,* 478 F.2d 894, 902 (2d Cir. 1973).   Hearsay evidence is admissible at extradition hearings and fully supports the court's findings leading to a certification under Section 3184.  *Collins v. Loisel,* 259 U.S. 309, 317 (1922); *Afanasjev v. Hurlburt*, 418 F.3d 1159, 1165 (11th Cir. 2005).  In *Bingham*, the Supreme Court rejected the respondent's claim that *ex parte* witness affidavits submitted in support of his extradition to Canada should not be considered because he had not had the opportunity to cross-examine those witnesses.  The Court referred to the applicable treaty language, which obligated the United States to extradite "upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial, if the crime or offense had there been committed." *Bingham v. Bradley*, 241 U.S. 511, 517 (1916).  As 18 U.S.C. § 3190 does today, its predecessor, applicable in *Bingham*,  provided for the admissibility at the extradition hearing of depositions, warrants and similar documents upon proper certification by the U.S. diplomatic or consular officer.  The Court in *Bingham* said:

---

purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required." 18 U.S.C.  § 3190.

> It is one of the objects of § 5170 [today, § 3190] to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty.

*Id.*  That principle of extradition law is as firmly-rooted today as it was in 1916 when the Supreme Court decided *Bingham.  See Zanazanian v. United States*, 729 F.2d 624, 626-627 (9th Cir. 1984) (applying *Bingham* to extradition to Sweden); *Shapiro* v. *Ferrandina*, 478 F.2d 894, 902 (2d Cir. 1973) (obviating necessity of confronting accused with witnesses against him is "one of the prime objects of bi-lateral extradition agreements"); *Surrender of Ntakirutimana*, 988 F. Supp. 1038, 1042 (S.D. Tex. 1997), *aff'd*, 184 F.3d 419 (5th Cir. 1999).  Even the advent of modern transportation and communication has not changed this firmly-rooted posture of the U.S. courts.  *See, Shapiro v. Ferrandina*, 478 F.2d 894, 902 (2d Cir. 1973).

### C.      The Fugitive's Evidence Is Very Limited, As In a Preliminary Hearing

Due to the nature and limited purpose of an extradition hearing under Section 3184 and the importance of the international obligations of the United States under an extradition treaty, a fugitive's opportunity to challenge the evidence introduced against him is very circumscribed.  A fugitive may not introduce evidence that contradicts the evidence submitted on behalf of the requesting country, but may introduce evidence explaining the submitted evidence.  "Generally, evidence that explains away or completely obliterates probable cause is the only evidence admissible at an extradition hearing, whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005)(*en banc*)(quoting *Mainero v. Gregg*, 164 F.3d 1199, 1207, n.7 (9th Cir. 1999)); *see also Ordinola v. Hackman,* 478 F.3d 588, 608-09 (4th Cir. 2007); *Hoxha v. Levi,* 465 F.3d 554, 561 (3d Cir. 2006).

The Supreme Court in *Collins v.  Loisel,* 259 U.S. 309 (1922), quoted with approval the district court's reasoning in *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883), elucidating why the

scope of an extradition hearing is very limited.  In *In re Wadge*, the district court rejected the argument that a fugitive should be given an extensive hearing in the extradition proceedings:

> If this were recognized as the legal right of the accused in extradition proceedings, it would give him the option of insisting upon a full hearing and trial of his case here; and that might compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus gathered from every quarter.  The result would be that the foreign government though entitled by the terms of the treaty to the extradition of the accused for the purpose of a trial where the crime was committed, would be compelled to go into a full trial on the merits in a foreign country, under all the disadvantages of such a situation, and could not obtain extradition until after it had procured a conviction of the accused upon a full and substantial trial here.  This would be in plain contravention of the intent and meaning of the extradition treaties.

*Collins v. Loisel,* 259 U.S. 309 at 316 (*quoting In re Wadge,* 15 F. at 866).

The extent to which the fugitive may offer explanatory proof is largely within the discretion of the committing judicial officer.  *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991); *Hooker v. Klein,* 573 F.2d 1360, 1369 (9th Cir.); *United States ex rel Petrushansky v. Marasco*, 325 F.2d 562, 567 (2d Cir. 1963).  The category of explanatory evidence is not large in light of the limited purpose of the hearing, *i.e.,* to determine the sufficiency of the evidence to sustain the charge, and the overarching goal of the proceeding, which is to effectuate the purposes of the treaty.  The extradition hearing excludes evidence that requires the court to make determinations outside of the scope of the hearing or within the province of the ultimate trier of fact, particularly when those determinations rest on foreign law.  Such evidence exceeds the limits of "explanatory" or "obliterating" evidence and is not properly before the court.  *In re Solis*, 402 F. Supp.2d 1128, 1132 (C.D. CA 2005).

In applying the prohibition on considering "contradictory evidence" and the allowance of "explanatory evidence" several courts have followed the explanation of these concepts elucidated by the court in the *Matter of Sindona:*

> The distinction between "contradictory evidence" and "explanatory evidence" is difficult to articulate.  However, the purpose behind the rule is reasonably clear.  In admitting "explanatory evidence," the intention is to afford an accused person the opportunity to

> present reasonably clear-cut proof which would be of limited scope
> and having some reasonable chance of negating a showing of
> probable cause.  The scope of this evidence is restricted to what is
> appropriate to an extradition hearing.  The decisions are emphatic
> that the extraditee cannot be allowed to turn the extradition hearing
> into a full trial on the merits.

*Matter of Sindona*, 450 F.Supp. 672, 685 (S.D. N.Y. 1978), *aff'd*, 619 F.2d 167 (2d Cir. 1980).

### D.   The Extradition Hearing Excludes Technical and Affirmative Defenses

A court should reject defenses against extradition that "savor of technicality," as they are peculiarly inappropriate in dealings with a foreign nation.  For example, a variance between the charges pending in the foreign state and the complaint filed on behalf of that state in our federal courts is not a defense to surrender.  *Glucksman v. Henkel*, 221 U.S. 508, 513-514 (1910); *Bingham v. Bradley*, 241 U.S. 511, 517 (1916); *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 927-1024 (2d Cir. 1974);   *Shapiro v. Ferrandina*, 478 F.2d 894, 904 (2d Cir. 1973).

It is also well settled that affirmative defenses to the merits of the charge are not to be entertained in extradition hearings.  *Charlton v. Kelly,* 229 U.S. 447, 462 (1913); *Collins v. Loisel*, 259 U.S. 309, 316-317 (1922); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1112 (7th Cir. 1997).  A fugitive may not introduce evidence that (1) merely conflicts with the evidence submitted on behalf of the demanding state, *Collins v. Loisel,* 259 U.S. 309, 315-317 (1922); (2) attempts to establish an alibi, *Shapiro v. Ferrandina,*  478 F.2d 894, 901 (2d Cir. 1973), (3) suggests an insanity defense, *Charlton v. Kelly,* 229 U.S. 447, 462 (1913); or (4) seeks to impeach the credibility of the demanding country's witnesses, *Bovio v. United States,* 989 F.2d 255, 259 (7th Cir. 1993).  These issues, which require factual and credibility determinations, are for the court in the requesting country to resolve at a trial of the charges.

### E.   The Executive Considers Matters Other Than Sufficiency; Rule of Non-Inquiry

Other than the sufficiency of the evidence, all matters that may be raised by the fugitive as defenses to extradition are to be considered by the Secretary of State, not by this Court.  See

18 U.S.C. §§ 3184, 3186.  In making extradition determinations, "[t]he Secretary exercises broad discretion and may properly consider factors affecting both the individual defendant as well as foreign relations - factors that may be beyond the scope of the magistrate judge's review." *Sidali v. I.N.S.*, 107 F.3d 191, 195 n.7 (3d Cir. 1997).  The Secretary takes into account humanitarian claims and applicable statutes, treaties, or policies regarding appropriate treatment in the receiving country.  *See*, *Ntakirutimana v. Reno*, 184 F.3d 419, 430 (5th Cir. 1999).  This is consistent with the long-held understanding that surrender of a fugitive to a foreign government is "purely a national act . . . performed through the Secretary of State," within the Executive's "powers to conduct foreign affairs."  *See* In re Kaine, 55 U.S. 103, 110 (1852).

Therefore, under this constitutionally-based rule of judicial non-inquiry, a fugitive's contention that the extradition request is politically motivated or that the justice system of the requesting state is unfair should be addressed by the Secretary of State.  It is not the role of the court to look behind the extradition request to the motives of the requesting country.  *Ordinola v. Hackman*, 478 F.3d 588, 604 (4th Cir. 2007) ("the motives of the requesting government are irrelevant to our decision" and "must be addressed to the Secretary of State"); *Eain v. Wilkes*, 641 F.2d 504, 513 (7th Cir. 1981) (sole discretion of Secretary of State to determine whether foreign country 's request for extradition is a subterfuge), *cert. denied*, 454 U.S. 894 (1981).  Likewise, the court should not investigate the fairness of the requesting country's criminal justice system. *United States v. Lui Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) ("It is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed").  *See also Prasoprat v. Benov,* 421 F.3d 1009, 1016 (9th Cir. 2005)*; Blaxland v. Commonwealth Director*, 323 F.3d 1198, 1208 (9th Cir. 2003).

Similarly, the Secretary of State has sole discretion under 18 U.S.C. § 3186 and the relevant treaty to determine whether a request for extradition should be denied on humanitarian grounds because of procedures or treatment awaiting the surrendered fugitive.  *See Quinn v.*

*Robinson,* 783 F.2d 776, 790-791 (9th Cir. 1986); *Ahmad v. Wigen,* 910 F.2d 1063, 1066 (2d Cir. 1990)("the degree of risk to [the accused's] life from extradition is an issue that properly falls within the *exclusive purview* of the executive branch.")(emphasis in original).  Respect for and confidence in the Executive's exercise of discretion is well placed, as stated in *Ahmad*:

> the district court proceeded to take testimony from both expert and fact witnesses and received extensive reports, affidavits, and other documentation concerning Israel's law enforcement procedures and its treatment of prisoners. This, we think, was improper.  The interests of international comity are ill-served by requiring a foreign nation . . .  to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced.  It is the function of the Secretary of State to determine whether extradition should be denied on humanitarian grounds.  So far as we know, the Secretary never has directed extradition in the face of proof that the extraditee would be subjected to procedures or punishment antipathetic to a federal court's sense of decency.  Indeed, it is difficult to conceive of a situation in which a Secretary of State would do so.

*Ahmad,* 910 F.2d at 1067; accord, *Martin v. Warden, Atalanta Penitentiary*, 993 F.2d 824, 830 (11th Cir. 1993) ("humanitarian consideration are matters properly reviewed by the Department of State).

Further, a fugitive's contention that he or she will be tried in the extraditing country for crimes other than those for which extradition will be granted must be rejected as baseless or, if not baseless, as beyond the responsibility of the court, for the United States government does not presume that the demanding government will seek a trial in violation of a treaty.  *Bingham v. Bradley,* 241 U.S. 511, 514 (1916).  As the district court noted in *Gallina v. Fraser*, 177 F. Supp. 857, 867 (D. Conn. 1959), *aff'd,* 278 F.2d 77 (2d Cir. 1960), "the Secretary of State of the United States would not authorize the surrender of a fugitive  .  .  .  to be punished for non-extraditable crimes, and  .  .  .  any extradition would be so conditioned as to negate this possibility."

## IV.    CONCLUSION

WHEREFORE, the United States requests that the court conduct a hearing, pursuant to Title 18, United States Code, Section 3184, to determine that the submission on behalf of the

15

Netherlands is sufficient to sustain each of the charges under the provisions of the applicable treaty and to certify the extradition of the fugitive for each of those charges to the Secretary of State for possible surrender to the Netherlands.

Respectfully submitted,
RICHARD G. CALLAHAN
UNITED STATES ATTORNEY


 */s/ John J. Ware*
JOHN J. WARE
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri   63102
(314) 539-2200



## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2016, the foregoing was filed electronically with the Clerk of the Court and sent via FedEx to the following:

John J. Allan
Attorney at Law
(Attorney for Cejvan)

 */s/ John J. Ware*
JOHN J. WARE, #40880MO
Assistant United States Attorney