UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF: ) | |
| THE EXTRADITION OF ) | Cause No. 4:16 MJ 3158 NCC |
| SENAD CEJVAN TO BONAIRE ) | |

**MEMORANDUM AND ORDER**

The United States of America, acting on behalf of the Kingdom of the Netherlands ("the Netherlands"), submitted a request for an order certifying the extradition of Senad Cejvan ("Cejvan") for crimes he allegedly committed on the island of Saba, one of three municipalities of the Netherlands located in the Caribbean Sea. (Doc. 16). The Court held an extradition hearing on October 25, 2016 pursuant to 18 U.S.C. § 3184 and the Extradition Treaty between the United States and the Netherlands. (Doc. 19). The Court has considered the Government's exhibit, the parties' written submissions, oral argument, statutory law, and case law. The Court finds that there is sufficient evidence to support Cejvan's extradition to Bonaire to face trial on the charges that have been brought against him. For the reasons stated below, and in compliance with 18 U.S.C. § 3184, this Court **GRANTS** the request for an order certifying extradition.

**I. PROCEDURAL BACKGROUND**

On August 12, 2016, the United States Attorney's Office filed a Complaint seeking a warrant for the provisional arrest of Cejvan based upon a request from the Netherlands pursuant to the extradition treaty between the United States and the Netherlands. (Doc. 1). The Court issued an arrest warrant as to the Complaint for Cejvan that same day. On August 17, 2016, Cejvan was arrested and brought before this Court, the Honorable David D. Noce, for his Initial Appearance. (Doc. 6).

On August 18, 2016, the Government filed a Motion for Pretrial Detention and Memorandum of Law in Support.  (Doc. 9).  On August 26, 2016, the Court held a Detention Hearing as to Cejvan.  (Doc. 12).  In light of the entry of new counsel on behalf of Cejvan, the Court provided counsel additional time to reply to the Government's Motion for Pretrial Detention.  (*Id.*).  On September 10, 2016, Cejvan filed his Response.  (Doc. 14).  Subsequently, on October 7, 2016, the Court granted the Government's Motion for Pretrial Detention, and further ordered that the extradition hearing be set for October 25, 2016.  (Doc. 15).  On October 20, 2016, the Government filed its Memorandum of Law in Support of Extradition.  (Doc. 16).  At the extradition hearing on October 25, 2016, the Court heard oral argument from counsel, and the Government introduced an exhibit into evidence ("Exhibit 1"), which comprised of the Netherlands formal request for extradition and the supporting documents required by the Extradition Treaty.  (Docs. 19-21).

## II. FACTUAL BACKGROUND

There is an Extradition Treaty in full force and effect between the United States of America and the Netherlands, which applies to all Kingdom countries and territories, including Saba.  *See* Extradition Treaty Between the United States of America and the Kingdom of the Netherlands signed at The Hague on 24 June 1980, U.S.-Neth., Sept. 29, 2004, S. TREATY DOC. NO. 109-14 (2006).  This treaty is enforceable through Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union (collectively referenced hereinafter as "the Treaty").  Pursuant to the Treaty, the United States and the Netherlands ("the Contracting Parties," as defined in the Treaty) have agreed to extradite to each other, subject to the provisions of the Treaty, persons charged with or convicted of extraditable offenses.  *See* The Treaty, at art. 1.

Under Article 20, the Scope of Application, the Treaty is applicable to all offenses encompassed in Article 2 committed before as well as after the Treaty enters into force. Accordingly, Article 2 of the Treaty provides in pertinent part:

(1) Extraditable offenses under this Treaty are:

    a. Offenses referred to in the Appendix in this Treaty which are punishable under the laws of both Contracting Parties;

    b. Offenses, whether listed in the Appendix to this Treaty or not, provided they are punishable under the Federal laws of the United States of America and the laws of the Kingdom of the Netherlands.

In this connection it shall not matter whether or not the laws of the Contracting Parties place the offense within the same category of offenses or denominate an offense by the same technology.

(2) Extradition shall be granted in respect of an extraditable offense:

    a. For prosecution, if the offense is punishable under the laws of both Contracting parties by deprivation of liberty for a period exceeding one year;

*See* The Treaty, at art. 2.

Even if all offenses charged are properly encompassed within the Treaty's provisions, extradition is limited to those cases where there is sufficient evidence, as determined by the laws of the state requesting an individual's extradition ("the Requesting State").  *See* The Treaty, at art. 9.  The extradition procedures and required documents, as defined under Article 9 of the Treaty, provide in pertinent part:

(1) The request for extradition shall be made through the diplomatic channel.

(2) The request for extradition shall be accompanied by:

    a. All available information concerning the identity, nationality, and probable location of the person sought;

    b. A statement of the facts of the case including, if possible, the time and location of the crime;

      c. The provisions of the law describing the essential elements and the designation of the offense for which extradition is requested;

      d. The provisions of the law describing the punishment for the offense;

      e. The provisions of the law providing for jurisdiction when the offense was committed outside of the territory of the Requesting State.

(3) A request for extradition relating to a person sought for the purpose of prosecution shall be accompanied by:

      a. The original or a certified copy of the warrant of arrest issued by a judge or other competent judicial officer of the Requesting State; and

      b. Such evidence as, according to the law of the Requested Sates, would justify that person's arrest and committal for trial if the offense had been committed there, including evidence establishing that the person sought is the person to whom the warrant of arrest refers.

\* \* \* \* \* \*

(5) The documents to be submitted in support of the request for extradition, in accordance with this Article and Article 10, shall be translated into the language of the Requested State.

(6) The documents which, according to this Article, shall accompany the extradition request, shall be admitted into evidence when:

\* \* \* \* \* \*

      b. In the case of a request emanating from the Kingdom of the Netherlands, they are signed by a judge or other judicial authority and are certified by the principal diplomatic or consular officer of the Unites States in the Kingdom of the Netherlands.

*See* The Treaty, at art. 9.

Pursuant to the Treaty, the Netherlands submitted a formal request on October 7, 2016 for Cejvan's extradition, arrest, and surrender, accompanied by supporting documents, to the United States Department of State. The United States, in a Declaration from the Department of State in Washington, D.C., dated October 18, 2016, verified that the Treaty between the United States and the Netherlands is presently in full force and effect, and certified the documents submitted.

4

Cejvan is the same person accused of committing the offenses in Saba and who is sought by the Netherlands in the request for extradition.  (Doc. 21, PageID 99).

In support of its request, the Netherlands submitted the Affidavit of Antoinette E.M. Doedens, a Prosecutor at The Public Prosecutor's Office of Bonaire, St. Eustatius, and Saba ("BES Islands"), which stated that Cejvan was charged with offenses under the Criminal Code of the BES Islands ("CCBES").  (Doc. 21, PageID 100-110).  The offenses are as follows: Murder, CCBES, Title XIX, art. 302; Manslaughter, CCBES, Title XIX, art. 300; Aggravated Assault (premeditated) resulting in death, CCBES, Title, XX, art. 313-15 and/or Rape, CCBES, Title XIV, art. 248; Involuntary Manslaughter, CCBES, art. 320; and Child Pornography, CCBES, Title XIV, art. 246.  (Doc. 21, PageID 316-317, 319-21).  The offenses of threat, slander/libel, and defamation are not referred to this Court for consideration.  As required by the Treaty, each of the aforementioned offenses is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year.

The Affidavit of Antoinette E.M. Doedens also provides a detailed summary of the facts and investigations in which Cejvan is the suspect.  (Doc. 21, PageID 100-336).  As a means of substantiating the extradition of Cejvan, the Netherlands supplemented the Affidavit with a police report including the following: a description of the crime scene; a report of the forensic autopsy; witness testimony; email communications; a report from the police-intelligence unit; a report concerning iMessenger chats; the Official Complaint filed against Cejvan; reports concerning Cejvan's residence and its subsequent search, Cejvan's departure, and Cejvan's refusal to make a statement; and DNA investigation data findings.  (Doc. 21, PageID 111-303).  The facts and evidence are further described below.

On April 15, 2015, the Saban police were notified of a potential crime. Upon arrival at the victim's residence, they found the body of a woman. (Doc. 21, PageID 112). On April 21, 2015, a judicial autopsy was conducted on the body. (*Id.*). The pathologist concluded that the victim's death was caused by "action of external mechanical oppressive violence." (*Id.*). After discovering the victim's body, the following witness statements were taken in an effort to reconstruct the last hours of the victim's life:  Cejvan on April 15, 2015 and April 17, 2015; A. Thapa on April 15, 2015, May 26th, 2015, June 19th, 2015, and June 12, 2015; E. Ogbomo on May 2, 2015; V. Rombley on May 5, 2015; V. Ordaz on May 9, 2015, June 12, 2015 and November 20, 2015; B. Shaffer on May 28, 2015 and November 19, 2015; and J. Lewis on May 14, 2015. (Doc. 21, PageID 157-287). The police also generated reports concerning the walking routes of witnesses A. Thapa and E. Ogbomo on the night of the crime. (Doc. 21, PageID 194-95, 214-17).

According to information provided by the Border Management System of the Royal Military Police, on May 20, 2015, Cejvan left Saba by plane to St. Maarten and then to Miami, Florida in the United States. (Doc. 21, PageID 119, 289-90). Following Cejvan's departure, a search was conducted at Cejvan's residence which revealed Cejvan had left all his personal belongings, including suitcases, clothing, etc. (Doc. 21, PageID 119-20, 294). During the search, police confiscated some of Cejvan's property. (Doc. 21, PageID 119-20, 291-98).

The Netherlands also conducted forensic DNA analysis in the course of their investigation. In total, four reports were conducted. (Doc. 21, PageID 109, 120-22).[1] On April 29, 2015, the medical examiner conducted a collective sexual investigation gathering various

---

[1] The Court notes that the Prosecutor included one full report and the summaries of the findings of the other three reports.

6

DNA samples from the victim's body. (Doc. 21, PageID 120-121). The results indicated that semen was present. (*Id*.). On July 10, 2015, a Y-chromosomal DNA study was conducted. (Doc. 21, PageID 121). While a DNA-head profile matched a sample provided by a man who had a known sexual relationship with the victim,[2] a secondary DNA profile of an unknown male was also found. (*Id*.). Following these results, on September 25, 2015, a Y-chromosomal DNA analysis was done on the secondary DNA profile to determine the geographical origin of the unknown male. (*Id*.). The results indicated that the secondary DNA profile originated from the southeastern part of Europe which geographically includes Bosnia, Cejvan's place of birth. (*Id*.). On November 11, 2015, a Y-chromosomal DNA study was conducted comparing the secondary DNA profile of the unknown male and a DNA sample from Cejvan's belongings. (Doc. 21, PageID 121-22). The results concluded that the Y-chromosomal DNA profile of Cejvan's belongings matched the Y-chromosomal DNA profile of the unknown male. (Doc. 21, PageID 122).

In addition to the evidence submitted, the Netherlands also provided the request for the provisional arrest of Cejvan, dated August 6, 2016, the Order for Pre-Trial detention, dated June 29, 2016, and the warrant for Cejvan's arrest, dated August 10, 2016. (Doc. 21, PageID 304-18). M.L.J. Koopmans, LL.M., judge at the Court of First Instance, is the Investigating Magistrate in the matter at hand. (*Id.*). Pursuant to Article 9(6) of the Treaty, the documents bear the certificate or seal of the Ministry of Security and Justice, the Ministry responsible for the foreign affairs of the Netherlands. Therefore, such documents satisfy the authentication requirements without need for certification by the U.S. Embassy in The Hague. The Netherlands has complied with the Treaty with respect to authentication.

---

[2] The individual testified that he had sexual intercourse with the victim on April 14, 2015. (Doc. 21, PageID 121).

7

## III. DISCUSSION

The process of extraditing a fugitive from the United States to the Netherlands is governed by federal statute, 18 U.S.C. § 3184, and international law through the extradition treaty between the United States and the Netherlands. Following the submission of a formal request for extradition and supplementary documents, the Court must hold a hearing to consider the evidence of criminality and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

The extradition hearing itself is unique in nature. It is neither civil nor criminal, but a statutorily defined *sui generis* proceeding that has remained unchanged since 1848. *In re Extradition of Jarosz*, 800 F. Supp. 2d 935, 938 (N.D. Ill. 2011) (emphasis in original). Neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply. Fed. R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101(d)(3). The Court also has a limited role in extradition proceedings. *See United States v. Kin Hong*, 110 F.3d 103, 109 (1st Cir. 1997); *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 828-829 (11th Cir. 1993). If, on such hearing, the Court finds the evidence sufficient to sustain the charge, it "shall certify the same, together with a copy of all the testimony taken before [it], to the Secretary of State," who shall decide whether to surrender the fugitive. 18 U.S.C. § 3184. *See also United States v. Wiebe*, 733 F.2d 549, 553 (8th Cir. 1984). "Extradition ultimately remains an Executive function." *Martin*, 993 F.2d at 829.

Under 18 U.S.C. § 3184, the general purpose of an extradition hearing is to provide a judicial determination that extradition is proper under the circumstances. An extradition certification is in order where: (1) the judicial officer has jurisdiction to conduct an extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the person before the Court is the

fugitive named in the request for extradition; (4) there is an extradition treaty in full force and effect; (5) the crimes for which surrender is requested are covered by the applicable treaty; and (6) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.  *In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d 876, 881-82 (N.D. Ill. 2006).  *See also Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *In re Extradition of Fulgencio Garcia*, 188 F. Supp. 2d 921, 925 (N.D. Ill. 2002).

The Court notes that Cejvan does not contest (1) the undersigned Judicial Officer's jurisdiction to conduct the extradition proceedings, (2) this Court's jurisdiction over Cejvan, (3) that Cejvan is the fugitive named in the request for extradition, (4) that there is an extradition treaty in full force and effect, or (5) that the crimes are covered by the applicable Treaty.  Rather, Cejvan opposes his extradition solely on the grounds that the Netherlands, through the United States, has failed to provide sufficient evidence to establish probable cause as to each charge against him.

### A.  Standard of Probable Cause to Extradite

Pursuant to 18 U.S.C. § 3184, this Court is required to consider the evidence of criminality presented by the Netherlands and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  In considering the requirements of the Treaty, it is well settled that the terms of an extradition treaty should be construed liberally in order to effect the parties' purpose—the surrender of fugitives to the requesting country to face trial on their alleged offenses.  *See Valentine v. United States ex. Rel. Neidecker*, 299 U.S. 5, 10 (1936); *Wiebe*, 733 F.2d at 554; *In re Extradition of Rodriguez Ortiz*, 444 F. Supp. 2d at 883.  Thus, the extradition hearing is not a trial on the merits to determine innocence or guilt, but rather "serves as a means of ensuring that *probable cause* exists to believe the person whose

9

surrender is sought has committed the crime for which his extradition is requested." *Wiebe*, 733 F.2d at 553 (emphasis added).  *See also Collins v. Loisel*, 259 U.S. 309, 316-17 (1922) (drawing a distinction between evidence rebutting probable cause and evidence in defense).

The standard of probable cause in an extradition hearing is established by federal law. *Eain v. Wilkes*, 641 F.2d 504, 507-08 (7th Cir. 1981).  This assessment to be made is similar to the one in a preliminary hearing under the Federal Rules of Criminal Procedure 5.1.  *Ward v. Rutherford*, 921 F.2d 286, 287 (D.C. Cir. 1990).  Accordingly, this Court is not required to determine whether Cejvan is guilty, but merely whether competent legal evidence would justify his apprehension and commitment for trial if the same offenses had been committed in Missouri. *Collins*, 259 U.S. at 314-15.  Probable cause itself has been "described as 'evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.'" *Wiebe*, 733 F.2d at 553 (quoting *Coleman v. Burnett*, 477 F.2d 1187, 1202 (D.C. Cir. 1973)).  "In making this determination, courts apply a 'totality of the circumstances analysis' and 'make a practical, common sense decision whether, given all the circumstances . . . , there is a fair probability' that the defendant committed the crime." *In re Extradition of Okeke*, No. 96-7019P-01, 1996 WL 622213, at *5 (D.N.J. Sept. 5, 1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

**B.  Probable Cause to Extradite**

Cejvan challenges his extradition on the basis that the Netherlands has failed to submit sufficient evidence to support a finding of probable cause on the charges brought against him. Specifically, during the hearing, Cejvan directed the Court's attention to the initial stages of the police investigation when the police's efforts were focused on the potential involvement of another male suspect.  However, as detailed above, the reports indicate that new investigative

10

findings surfaced during the investigation that made it more probable that Cejvan was involved in the alleged offenses.  Thus, this Court does not find the evidence insufficient merely because another individual was initially a suspect in the case.  The Court is to examine the totality of the circumstances, including investigative findings following the suspicion and subsequent release of the second male suspect.

Next, Cejvan calls into question whether the witnesses against him are credible because they are biased against him.  However, "the purpose of an extradition hearing is not to resolve issues concerning any potential inconsistencies of the evidence." *Rios v. U.S.*, No. 10-2192, 2011 WL 915162, at *4 (D. Minn. Feb. 24, 2011).  "The proper forum for raising facts contradicting the requesting proof, certain defenses and issues surrounding witness credibility, bias, or motive is not the extradition proceeding but [respondent's] trial" in Bonaire.  *Castaneda v. United States,* 2005 WL 19457 at *3 (D. Minn. Jan. 3, 2005) (citing *Wiebe*, 733 F.2d at 553 n.4).  Regardless, this Court finds there is sufficient evidence in addition to witness testimony, namely, the Y-chromosomal DNA forensics and analysis, to support a finding of probable cause.

## IV. CONCLUSION

Based on consideration of the extradition documents offered into evidence on behalf of the Netherlands, the parties' written submissions, oral argument, statutory law, and case law, the Court finds that the terms of the Treaty and 18 U.S.C. § 3184 have been met.  Specifically, the Court finds the following:

1. This Court has jurisdiction in this matter;

2. The undersigned United States Magistrate Judge has authority to conduct these proceedings;

3. The person who appeared before this Court at the extradition hearing held on October 25, 2016, was Senad Cejvan, the fugitive named in the extradition request from the Netherlands.

11

4. The offenses identified in the certified arrest warrant for Senad Cejvan issued by the Public Prosecutor in the Netherlands constitute extraditable offenses within the terms of the Treaty; and

5. There is sufficient evidence before the Court that supports a finding of probable cause as to each charge for which extradition is sought.

Accordingly, the undersigned finds that Senad Cejvan is extraditable under the Treaty for the offenses described in the extradition request and certifies these findings to the Secretary of State. An appropriate order is issued herewith.

### *CERTIFICATION AND ORDER*

In accordance with the Memorandum filed herewith,

**IT IS HEREBY CERTIFIED TO THE SECRETARY OF STATE** that the evidence against respondent Senad Cejvan is sufficient to sustain the charges against him in the Netherlands under the applicable treaty and protocol, that said respondent is extraditable under the aforesaid treaty and protocol, and that further proceedings in extradition may be conducted.

**IT IS HEREBY ORDERED** that this Certification and Order, together with a copy of all evidence submitted to the Court upon the issue of extradition, and a transcript of the extradition hearing, be forwarded by the Clerk of the Court to the United States Secretary of State so that a warrant may issue upon the requisition of the proper authorities of the Netherlands for the surrender of respondent to that Kingdom. Cejvan shall remain in the custody of the United States Marshal pending his surrender to the Government of the Netherlands, or until further order of the court.

Dated this 22nd day of November, 2016.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE